1 | **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

2 | Name   CALLOWAY      PAUL                          FILED

3 |          (Last)           (First)          (Initial)

4 | Prisoner Number   H-92309                                 AUG 2 9 2008

4 | Institutional Address P.O. Box 689 GW-345U   C.T.F.

5 |              Soledad, CA 93960-0689        RICHARD W. WIEKING
                                               CLERK, U.S. DISTRICT COURT
6 |                                            NORTHERN DISTRICT OF CALIFORNIA (PR)

7 |                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF CALIFORNIA

8 | Paul Colloway                                              PJH

(Enter the full name of plaintiff in this action.)

9 |                                          Case No. ___ 4137
                                            (To be provided by the clerk of court)
10 |              vs.

11 | Ben Curry, Warden.                       **PETITION FOR A WRIT
                                              OF HABEAS CORPUS**

12 | _____                 E-filing

13 | _____

14 | _____

(Enter the full name of respondent(s) or jailor in this action)

16 |              Read Comments Carefully Before Filling In

17 | When and Where to File

18 |        You should file in the Northern District if you were convicted and sentenced in one of these

19 | counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20 | San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21 | this district if you are challenging the manner in which your sentence is being executed, such as loss of

22 | good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23 |        If you are challenging your conviction or sentence and you were **not** convicted and sentenced in

24 | one of the above-named fifteen counties, your petition will likely be transferred to the United States

25 | District Court for the district in which the state court that convicted and sentenced you is located. If

26 | you are challenging the execution of your sentence and you are not in prison in one of these counties,

27 | your petition will likely be transferred to the district court for the district that includes the institution

28 | where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS        - 1 -

1 | <u>Who to Name as Respondent</u>

2 |      You must name the person in whose actual custody you are. This usually means the Warden or

3 | jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4 | you are imprisoned or by whom you were convicted and sentenced. These are not proper

5 | respondents.

6 |      If you are not presently in custody pursuant to the state judgment against which you seek relief

7 | but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8 | custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9 | was entered.

10 | A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11 |     1. What sentence are you challenging in this petition?

12 |        (a)   Name and location of court that imposed sentence (for example; Alameda

13 |               County Superior Court, Oakland):

14 |      **Compton Courthouse**     **Los Angeles County**

15 |      Court                Location

16 |        (b)   Case number, if known **TA001416**

17 |        (c)   Date and terms of sentence **9/1/03 17 years to life**

18 |        (d)   Are you now in custody serving this term? (Custody means being in jail, on

19 |             parole or probation, etc.)      Yes **x**    No _____

20 |             Where?

21 |             Name of Institution: **Correctional Training Facility**

22 |             Address: **P.O.Box 689 345U Soledad, CA**

23 |     2. For what crime were you given this sentence? (If your petition challenges a sentence for

24 | more than one crime, list each crime separately using Penal Code numbers if known. If you are

25 | challenging more than one sentence, you should file a different petition for each sentence.)

26 | **2nd Degree Murder P.C. 187(a); Voluntary Manslaughter, P.C.**

27 | **192(a); Gun Allegation 12022.5 (2 year enhancement)**

28 |

PET. FOR WRIT OF HAB. CORPUS    - 2 -

3. Did you have any of the following?

Arraignment:                    Yes _x_        No _____

Preliminary Hearing:            Yes _x_        No _____

Motion to Suppress:             Yes _x_        No _____

4. How did you plead?

Guilty _____   Not Guilty _x_   Nolo Contendere _____

Any other plea (specify) __Plea Bargain for Manslaughter__

5. If you went to trial, what kind of trial did you have?

Jury _x_       Judge alone_____   Judge alone on a transcript _____

6. Did you testify at your trial?                Yes _____    No _x_

7. Did you have an attorney at the following proceedings:

(a)    Arraignment                 Yes _x_        No _____

(b)    Preliminary hearing         Yes _x_        No _____

(c)    Time of plea                Yes _x_        No _____

(d)    Trial                       Yes _x_        No _____

(e)    Sentencing                  Yes _x_        No _____

(f)    Appeal                      Yes _x_        No _____

(g)    Other post-conviction proceeding    Yes _____    No _x_

8. Did you appeal your conviction?               Yes _x_        No _____

(a)    If you did, to what court(s) did you appeal?

Court of Appeal                Yes _x_        No _____

Year: _1994_    Result: __Denied__

Supreme Court of California     Yes _x_        No _____

Year: _N/A_     Result: __Denied__

Any other court                Yes _____    No _x_

Year: _____   Result:_____

(b)    If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS          - 3 -

1          petition?             Yes _____    No __x__

2      (c)     Was there an opinion?      Yes _____    No_____

3      (d)     Did you seek permission to file a late appeal under Rule 31(a)?

4                                      Yes _____    No_____

5          If you did, give the name of the court and the result:

6          _____

7          _____

8   9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9   this conviction in any court, state or federal?    **N/A**    Yes _____    No_____

10       [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11   challenged the same conviction you are challenging now and if that petition was denied or dismissed

12   with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13   for an order authorizing the district court to consider this petition. You may not file a second or

14   subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15   U.S.C. §§ 2244(b).]

16      (a)     If you sought relief in any proceeding other than an appeal, answer the following

17            questions for each proceeding. Attach extra paper if you need more space.

18        I.     Name of Court: **Los Angeles County Superior Court**

19            Type of Proceeding: ___**Habeas Peition**_____

20            Grounds raised (Be brief but specific):

21            a.__**The Board Had no evidence Petitioner was Currently an Unreasonable Risk To Public**__

22            b.__**Safety the Decision was Otherwise Arbitrary in Violation of Federal Due Process Clause.**__

23            c._____

24            d._____

25            Result: **Denied**_____ Date of Result:_____

26        II.     Name of Court: **State Court of Appeal**_____

27            Type of Proceeding: ____**Habeas Petition**_____

28            Grounds raised (Be brief but specific):

a._____ Same as Above _____

b._____

c._____

d._____

Result: _____ Denied _____Date of Result: 5/29/08

III. Name of Court: California Supreme Court

Type of Proceeding: Petition For Review

Grounds raised (Be brief but specific):

a. Same as Above

b. Does the fact that Petitioner disagrees with the Board's Version of the Offense violate P.C. 5011, and CCR Tit. 15 2236 and Federal

c. Due Process.

d._____ (SEE 6-A Attached) _____

Result: _____ Denied _____Date of Result: 8/13/08

IV. Name of Court: _____

Type of Proceeding: _____

Grounds raised (Be brief but specific):

a._____

b._____

c._____

d._____

Result: _____Date of Result:_____

(b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes _____    No  x ____

Name and location of court: _____

B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied? What happened? Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS        - 5 -

1   need more space. Answer the same questions for each claim.

2       [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3   petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4   499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5       Claim One:_____**See Attached Pages**_____

6   _____

7       Supporting Facts:_____

8   _____

9   _____

10  _____

11      Claim Two:_____**See Attached Pages**_____

12  _____

13      Supporting Facts:_____

14  _____

15  _____

16  _____

17      Claim Three:_____**See Attached Pages**_____

18  _____

19      Supporting Facts:_____

20  _____

21  _____

22  _____

23      If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25  _____

26  _____

27  _____

28  _____

PET. FOR WRIT OF HAB. CORPUS     - 6 -

Court of Appeal, Second Appellate District, Div. 7 - No. B208037
**S164227**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re PAUL CALLOWAY on Habeas Corpus

The petition for review is denied.

SUPREME COURT
FILED

AUG 1 3 2008

Frederick K. Ohlrich Clerk

Deputy

**GEORGE**

Chief Justice

Ground ___ or Ground ___ 1 ___ (if applicable):

THE BOARD OF PRISON TERMS ILLEGALLY USED PENAL CODE SECTION 3041(b) [THE EXCEPTION]

TO FIND PETITIONER UNSUITABLE FOR PAROLE THE DECISION WAS ABRITRARY AND CAPRICIOUS,

IN DIRECT VIOLATION OF STATE AND FEDERAL DUE PROCESS RIGHTS. THERE IS NOT A MODICUM

OF EVIDENCE THAT PETITIONER IS A CURRENT THREAT TO SOCIETY OR UNSUITABLE FOR PAROLE.

a. Supporting facts:
On Spetmber 13,2006, Petitioner Paul Calloway, (hereinafter "Petitioner"), was

provided a Life Term Parole Consideration Hearing before the Board of Prison Terms,

(hereinafter "Board"; please refer to Exhibit # E., which is the Hearing Transcript,

hereinafter "HT".) Said Board Hearing was petitioner's "3rd parole suitability

hearing. Petitioner's minimum eligible release date was set at April 4,2001.(1).

The purpose of this Board Hearing was for the setting of Petitioner's term uniformly."

(2), to his offense and for a finding of suitability for parole release.(Please

See Penal Code § 3041.5; In re Edward Ramirez, 94 Cal.App.4th 541 (2001);

McQuillion v Duncan,(9th Cir.) 306 F.3d 895; In re Norman G. Morrall,(2002) 102

Cal.App. 4th 280; In re Rosenkrantz,(2002) 29 Cal.4th 660; In re Mark Smith,(2003)

114 Cal.App.4th 343; and the previous decision of Biggs v Terhune, (2003 9th Cir.)

334 F. 3d 910. The consequent result of this Board Hearing was an erroneous and

unlawful finding of unsuitability and a release date was not set; petitioner was

given a "3" year denial, and did not appeal the decision through the Adminsitrative

remedy because the Board of Prison Terms has eliminated the BPT Appeals Unit and

no longer allows for the filing of adminstrative appeals on BPT denials of parole

for indeterminately sentenced prisoners such as myself. Petitioner submits that

the Board's regulation, that is California Code of Regulations (hereinafter "CCR").
( Continued on Attached 7-A-1.)

b. Supporting cases, rules, or other authority:

**7-A-0**

PETITION FOR WRIT OF HABEAS CORPUS

(Attached 7-A-1.)

1  § 2402(a), Demands that the Board set a release date unless Petitioner

2  currently presents a risk of danger to the public. Petitioner submits that

3  the representing District Attorney did not provide any new and/or

4  additional evidence whatsoever that Petitioner was an unreasonable risk,

5  a danger to the public, or otherwise suitable for parole(See "HT"2 Page

6  47.) (See Exhibit # F.)

7      Additionally, Petitioner submits that the Board speaks in meaningless

8  generalities and fails to address the exact nature of Petitioner's CURRENT

9  character. By not doing so, the Board violates the intent and spirit of

10  Penal Code § (herinafter "PC"), § 3041.5(3), and In re Ramierz,supra, which

11  dictates that "[T]he Board shall NORMALLY set a parole release date."

12  (citing Biggs v Terhune, et al.,supra).

13

14  *
1. The Court of Appeal in In re George Scott, (2004) 119 Cal.App.4th 871,
reaffirmed the rationale of the Ramirez and Smith Courts when it declared"...

15  **parole is the rule, rather than the exception, and conviction for second
degree murder does not automatically render one unsuitable. (In re Smith**

16  **(2003) 114 Cal.App.4th 343,366,** In re Ramirez,supra, 94 Cal.App. 4th 549...
[a]ll violent crimes demonstrates the perpetrator's potential for posing

17  a grave risk to public safety, yet parole is mandatory for violent felons
serving determinate sentences. Penal Code § 3000,subd(b)(1). And the

18  Legislature has clearly expressed its intent that when murderers-who are
the great majority of inmates serving indeterminate sentences-approach their

19  minimum eligible parole date, the Board 'shall normally set a parole release
date..." (id at p.570). **

20  2. The Court of Appeal on June 24,2004, in In re George Scott,supra, 119
Cal.App. 4th at 887 fn.7, also reaffirmed the Legislative Intent of Uniform

21  Terms by stating: "The first two sentences of the DSL declare ;that the
purpose of imprisonment on a crime is punishment' and that "[t]his purpose

22  is best served by terms proportionate to the seriousness of the offense
with provisions for uniformity in the sentences of offenders comitting the

23  same offense under similar circumstances. (Penal Code § 1170,subd.(a)(1).)
Nothing in the DSL or its Legislative history suggests that legislative

24  concern wth uniformity was limited to those serving determinate terms.
Penal Code § 3041 shows tat this interest does extend to individuals such

25  as [petitioner] who are serving indeterminate life terms. (id., citing
Ramirez,supra, 94 Cal.App.4th at 559.)

26

27

28

1   The Court in Biggs, supra, held that the Board's continued
2   use of the crime as a basis for denial of parole violates both
3   State and Federal due process. For the past 17 years petitioner
4   has had no occurrence of serious violent disciplinary action,
5   thus exemplifying himself as a model prisoner; Petitioner seeks
6   acknowledgement of the facts that since 2/27/01 respectively,
7   there has been there after a continuous 14 year history free
8   of any disciplinary action and or occurrence.

9   Petitioner submits that the Board's failure to uniformly
10  measure his offense and setting his term proportionately to
11  others similarly situated, and to find him suitable for parole,
12  violates both State and Federal due process. Also,the current
13  policy of the Board, which will be discussed more fully infra,
14  is the setting of a parole date which is all too often the
15  exception rather than the norm, and thus violates Petitioner's
16  liberty interest that is present in parole date;
17  In re Rosenkrantz, supra, McQuillion v Duacan,supra;Biggs v
18  Terhune,et al.,supra. At petitioner's Board Hearing, the Board
19  relied SOLELY  on the commitment offense and prior history
20  to justify its unlawful finding of unsuitability.

21
22
23
24
_____
25  *** 3. There is no evidence that the crime was "particularly egregious"
    to justify the use of the exception of PC§3042(b);In re Norman Morrall,supra
26  the court conlcuded "[W]e agree that an inmate cannot be denied parole
    simply on the type of offense he committed."(see In re Minnis,7 Cal.3d
    at pg.647).To the contrary, it falls squarely in the Board's own
27  propportionality matrix"36 mos"; Without post conviction credits petitioner
    has served has served 17 years...given post conviction credits--4 years,
28  1 month,5 days--exceeding hismatrix by 1 year. There is no evidence that
    Petitioner is a current risk or threat to society and the Board's
    conclusions are not supported by the record(See Biggs,supra.)
                        7-A-2

1     In considering whether petitioner is entitled to parole or
2  to be denied the board stated:

3     "Presiding Commissioner Biggers": In the matter of Mr.Paul
4  Calloway we've reviewed all the information received from the
5  public and relied on the following circumstances in concluding
6  that your not suitable for parole and would pose an unreasonable
7  risk of danger  to society or a threat to public safety if
8  released from prison. Now Mr.Calloway, you did not talk about
9  the crime, that your right. And in view of the records and
10  (inaudible) you are saying that you are not guilty of the crime.

11     The record reflects otherwise. And we have to (inaudible)
12  on the record until such time as (inaudible) you can prove
13  that you're not guilty of the (inaudible) crime. Judging the,
14  all the other input, I know the appellate decision (inaudible)
15  of the Board Report details (inaudible) by yourself, was very
16  cold, cruel and callous in that you and some (inaudible) that
17  you were buying for in the chase down of Mr.Dennis Rogers in
18  the Imperial Court housing project(inaudible). And the jury
19  found you guilty of that second degree murder death. You were
20  positively identified subsequently through video (inaudible)
21  contacted and relied  on (inaudible) by a Cedrick Miguel who
22  was a known drug dealer. There were multiple (inaudible) in
23  separate incidents one an innocent bystander, 7-year old Kanita
24  Haley was also killed during a (inaudible) attempted murder
25  of another individual who was also a one Donnel Jones who drove
26  (inaudible) and the 7 year old (inaudible).

27     And again, the record indicated that you were the shooter
28  in both of those incidents in regards to what you (inaudible).

1    The motive if it is in fact true was very trivial in that
2  somebody had hired out you to go out there and carry out a
3  murder (inaudible).

4    This information was taken from the probationer's report
5  as well as the appellate decision. The, I want to note for
6  the record that in previous reports you indicated, the **previous**
7  reports you indicated, the previous panel indicated that you
8  (inaudible) when you were granted some probation (inaudible)
9  and I haven't been able to find that anywhere. So therefore
10  I want to go on record that this panel cannot find that this
11  inmate(inaudible) you would do it on probation (inaudible) or
12  done jail time, whatever. So that should clear up the matter
13  that the previous panel did say that you were (inaudible) on
14  the CYA assessment.

15   The board on reviewing petitioner's prison term for release
16  denied petitioner on various grounds and reasons, the majority
17  of which was the commitment offense, no vocation, failure to
18  upgrade educationally and the Board did not agree with the
19  psychologists evaluation from Dr.Macomber that:

20   "Petitioner is not a gentle,passive individual." (See "HT2"
21  Page 55-57, Line 8.)

22   Penal Code § 3041 provides the framework for parole decisions
23  for indeterminate life inmates. In making the section 3041,
24  subdivision (b) suitability determination, the BPT is charged
25  with considering "[a]ll relevant, reliable information." (Cal.
26  Code.Regs.,tit.15,§ 2402,subd.(b)), including the nature of
27  the commitment offense and behavior before,during, and after
28  the crime;the prisoner's social history;mental state,

1 | criminal record,attitude towards the crime; and parole plans;
2 | (§ 2402,subd.(b).)

3 |   The circumstance tending to show unsuitability for parole
4 | include that the inmtae:

5 | (1) Committed the offense in a particularly heinous,atrocious,
6 |    or cruel manner (5);

7 | (2) Possess a previous record of violence;

8 | (3) Has an unstable social history;

9 | (4) Has previously sexually assaulted another individual in
10 |    a sadistic manner;

11 | (5) Has a lengthy history of severe mental problems related
12 |    to the offense; and

13 | (6) Has engaged in serious misconduct while in prison.(§ 2402,
14 |    subd.(c).)

15 |   None of the above numbered sections apply to petitioner,
16 | and specifically sections (1),(20 as cited in their denial.
17 | (See "HT2" Page # 53.)

18 |   The board relied on the probation report and appellate
19 | decision details to establish the crime was very cold,cruel
20 | and callous. Neither of those reports state that either of the
21 | victims suffered, so that conclusion drawn by the (BPT) cannot
22 | be drawn and a new hearing must be held where there is no
23 | evidence of that fact.(See Exhibit # C.)

24 |   Circumstances tending to show suitability for parole include
25 | that the inmate:

26 | (1) does not possess a record of violent crime committed while
27 |    a juvenile;

28 | (2) Has a stable social history;

1  (3) Has shown signs of remorse;

2  (4) Committed the crime as the result of significant stress

3      in his life, especially if the stress had built over a long

4      period of time;

5  (5) Committed the criminal offense as a result of battered

6      woman syndrome;

7  (6) Lacks any significant history of violent crime;

8  (7) Is of an age that reduces the probability of recidivism;

9  (8) Has made realistic plans for release or has developed

10     marketable skills that can be put to use on release; and

11 (9) Has engaged in institutional activities that suggest an

12     enhanced ability to function within the law on release.

13 (§ 2402, subd.(d).).

14     These criteria are "general guidelines," illustrative rather

15 than exclusive, and the importance attached to any circumstance

16 or combination of circumstances in a particular case is left

17 to the judgment of the BPT." In re Rosenkrantz, (2002) 29 Cal.4th

18 616,679; as quoted by In re Shaputis, 2005 DJDAR 14892.

19     The BPT in making its decision failed to consider the decision

20 rendered in In re Scott, (2004) 119 Cal.App.4th 871,884, that;

21

22 (5). Factors that support the finding the crime was committed "in an
   especially heinous, atrocious or cruel manner"(§ 2402, subd (c)(1) include
   the following: (a) Multiple victims were attacked, injured, or killed in the

23 same or separate incidents; (b) the offense was carried out in a dispassionate
   and calculated manner, such as execution style murder; (c) the victim was

24 aabused, defiled, or mutilated during or after the offense;(d) the offense
   was carried out in a manner that demonstrates an exceptionally callous

25 disregard for human suffering; and (e) the motive for the crime is
   inexplicable or very trivial in relation to the offense.

26

27

28

7-A-6

1    "[A]ll second degree murders by definition involve some
2    callousness - - i.e., lack of emotion or sympathy,emotional
3    insensitivity, indifference to the feelings and suffering of
4    others. [citation]. As noted, however, parole is the rule, rather
5    than the exception, and a conviction for second degree murder
6    does not automatically rendered one unsuitable.[ Quoting In
7    re Smith,(2003) 114 Cal.App.4th 343,366]"

8       Accordingly, the BPT cannot rely on the bare conviction for
9    second degree murder to deny parole under the exceptionally
10   callous or cruel factor. Rather, the inquiry is whether among
11   murders the one committed by petitioner was particularly heinous,
12   atrocious or cruel. In re Ramirez,(2001) 94 Cal.App.4th 549,570,
13   disapproved on another point by In re Dannenberg,(2005) 34 Cal.
14   4th 1061,1082-1083,1100.) By that measure petitioner's crimes
15   were more commonplace than egregious. By comparison to some
16   similar or other crimes that were considerd atrocious are the
17   following:

18      In In re Rosenkrantz, the defendant "brutally murdered his victim after a
19   full week of careful preparation, rehearsal and execution." The defendant
20   killed his victim by firing "10 shots at close range from an assault weapon
21   and [firing], at least three or four shots into the victim's head as he lay
22   on the pavement." (Rosenkrantz's, supra, 29 Cal.4th at p.678.)

23      In In re Dannenberg,supra, 34 Cal.4th at page 1095, the defendant
24   "reacted with extreme and sustained violence," striking "multiple blows to
25   his wife's head with a pipe wrench." While she was helpless from her
26   injuries, he delivered the coup de grace by placing her head "into a bathtub
27   full of water,....or at least leaving it there without assisting her until
28   she was dead."(Ibid.)

1  IN In re McClendon,(2003) 113 Cal.App.4th 315, the defendant
2  planned a "calculated attack" in the "middle of the night"
3  against his estranged wife.

4    He arrived at her home wearing rubber gloves and carrying a
5  handgun and wrench, which he used to attack his wife and another
6  victim.( Id at pp. 321-322.)

7    In In re Burns,(2006) 136 Cal.App.4th 1318, the defendant
8  and murder victim were longtime friends who has been dating.
9  When the victim moved away to college, she told the defendant
10 she wanted to stop seeing him. The court described her last
11 hours alive as follows:

12   "[A]fter luring Katina to an isolated spot and shooting her,
13 [defendant] did not summon help or stay to help her. Instead he
14 walked away, climbed the stairway of his dormitory building from
15 which Katina might have been visible, and entered his dorm room
16 where he laid down on his bed and may have joined his roommate
17 who was watching Monday Night Football.

18

19   Meanwhile, Katina, who had been shot between 7:00 and 8:00
20 p.m., was not found until 9:45 p.m. when found, she was lying on
21 her back and moaning.

22   Her body had scratches indicating that she may have tried to
23 obtain help.

24   Katina was not pronounced dead until after midnight. Thus,
25 [defendant] had approximately one to two hours in which he could
26 have reconsidered his disregard for Katina's suffering and life,
27 but he did not do so."

28 (Id at pp.1327-1328.)

1    In In re Van Houten,(2004) 116 Cal.App.4th 339, the
2 defendant participated in the "premeditation" "gratuitous
3 mutilation" of a married couple in which the wife "was stabbed a
4 total of 42 times" and "struggled for her life while hearing her
5 husband meet his gruesome fate."(Id at pp.346,351,366.)

6    In In re DeLuna, (2005) 126 Cal.App.4th 585, the defendant
7 fought with the victim outside of a bar, retrieved a rifle, shot
8 the victim in the mouth and then deliberate[ly] stalk[ed the]
9 defenseless victim" through the parking lot, firing at him until
10 he died.(Id at p.593.)

11    In In re Lowe, supra, 130 Cal.App.4th 1405, the defendant
12 had a "special relationship of trust and confidence" with the
13 victim. He purchased a gun shortly before the murder, entered
14 the victim's bedroom while the victim slept " and shot him five
15 times in the head and chest, execution style."(Id at p.144.)

16    And finally in In re Morrall,(2002) 102 Cal.App.4th 280, a
17 defendant embroiled in an atrocious  divorce was a poisonous
18 brew of "self fostered anger."  He was "angry at the prospect of
19 being compelled to divide the community property with his wife.
20 He was angry that his wife would have custody and thus some
21 control over when he could see the children. He was angry that
22 his wife would stand up for her interests in the dissolution
23 proceedings rather than simply yield to his demands." ( Id at
24 p.300) In the months before he murdered his wife, he threatened
25 her a number of times, hoping to get his way in the dissolution
26 proceedings. He told his wife's parents "that he would have his
27 wife killed and would burn both houses before he ever gave her a
28 dime."(Ibid.)

1    Consumed by incalculable rage, he took a loaded gun to her
2    house. The Court described his wife's final moments as follows:
3    "At first, the victim would not open her door. When she did,
4    he shot her seven times, including a contact wound to the neck.
5    In doing so, he consummated the life endangering anger he had
6    been harboring, also deprived his young children of a mother and
7    imposed upon them the stigma of having a murder for a
8    father."(Ibid.)

9    Therefore, petitioner's crimes do not measure against the
10   foregoing offenses as "especially heinous,atrocious or cruel
11   manner." In comparing petitioner's case to these and the fact
12   the Board (BPT) stated it relied on the probation report and
13   appellate decision is not a justified conclusion as neither of
14   those reports have this type of information and petitioner must
15   receive a new hearing.(See Exhibit # G.)

16

17   The BPT stated its decision to deny parole on Page 54, Line 16-
18   17, in which it was stated:

19   "This information was taken from the probationer's report as
20   well as the appellate decision."

21   In looking at both of those reports as well as the trial
22   transcripts, shows the contrary, where Donnell Jones testifies
23   that he never witnessed petitioner or could positively identify
24   the person who was the shooter on the day of the crime.(See
25   Exhibit # H. Trial Transcript.)

26

27   None of the records the BPT points out indicate Donnell Jones
28   identified petitioner, but that Burnett identified petitioner

1  the BPT has not relied on some evidence as required by
2  Superintendent v Hill,(1985) 472 U.S.445, 105 S.Ct.2768,86
3  L.Ed.2d 356; In re Powell,(1988) 45 Cal.3d 894,248
4  Cal.Rptr.431,755 P.2d 881.

5

6  In addition, and with regard to the petitioner's suitability,
7  the board erred in its conclusion that petitioner's Psychiatric
8  Report was not supportive of release, or that petitioner needed
9  additional theraphy.

10

11  Petitioner's psychiatric reports have been much to the contrary,
12  and specifically, Dr.Macomber stated:

13  XII. Current Mental Status/ Treatment Needs.

14  Mr.Calloway related during the interview in a serious, sober,
15  and co-operative manner.

16

17  His mental status was within normal limits.

18

19  There was no history of any emotional problems in this case. His
20  thinking was rational, logical, and coherent, His speech was
21  normal,fluent and goal oriented. His eye contact was excellent.
22  His memory was intact. His judgment was intact. His insight and
23  self-awareness were very good. There is no evidence of signs or
24  symptoms of Anti-Social Personality Disorder, or any other
25  personality disorder.

26

27  Mr.Calloway has been making a good institutional adjustment. He

28

1 | only has received one disciplinary in 1996 for resisting staff.
2 | There is no evidence of aggression, violence, possession of
3 | weapons, or assaults on others. He has completed his High School
4 | Diploma, but he currently is enrolled in education in order to
5 | get his GED.

6 |

7 | And under "Assessment of Dangerousness" Dr.Macomber stated:
8 | A. In considering potential for dangerous behavior in the
9 | institution, Mr. Calloway has never been involved in serious
10 | disciplinaries. At this time, we are experiencing racial riots
11 | at this prison. He has never been involved in any of these
12 | activities including possession of weapons, assaults on others,
13 | or any other disciplinary. By nature, he appears to be
14 | gentle,passive individual, who is not at all aggressive or
15 | violent.

16 |

17 | In comparison to other inmates, potential for dangerous behavior
18 | is definitely below average.
19 | B. In considering potential for dangerous behavior when released
20 | to the community, the Level of Service Inventory-Revised was
21 | administered. This is an actual measure that assesses criminal
22 | history, substance abuse history, current attitudes, and
23 | achievements in prison, in order to determine current risk level
24 | or parole.

25 |

26 | He obtained a score of 0.9 cumulative frequency for community
27 | offenders. This score means that if 100 men were released on
28 | parole, he would be expected to do better on parole than 99 of

1  them. This is very low risk level.

2

3  As a result, he poses no more risk to society than the average
4  citizen in the community.

5  C. There are no significant risk factors in this case. (See
6  Exhibit # I. Psychiatric Evaluation.)

7

8  Additionally, the BPT ignored that petitioner has been deemed by
9  the California Department of Rehabilitation and Corrections a
10  model prisoner with A-1-A status, and not a threat to society,
11  and further ignored that petitioner's crime is not "particularly
12  egregious" by placing petitioner in a Level II prison
13  setting.((4).

14      Again, In re Norman G. Morrall,supra, the Court concluded
15      " A refusal to consider the particular circumstances relevant
16   to an inmate's individual suitability for parole would be
17   contrary to law." Moreover, the Court in Biggs, supra,addressed
18   the Board's continued illegal usage of the crime and/ or prior
19   history to justify a denial of parole:

20      ".... a continued reliance ...on an unchanging factor,
21      the cricumstances of the offense and conduct prior to
22      imprisonment, runs contrary to the rehabilitative goals
23      espoused by the prison system and could result in a due

24
   (4). California Code of Regulations, Title 15, section 3375.2 subd(7)(A).
25   states " An inmate serving any life term shall not be housed in a Level I or
   II Facility if any of the following case factors are present: The commitment
26   offense involved...unusual violence ..." And on June 24,2004, the Court of
   Appeal in In re George Scott,supra,119 Cal.App.4th at 892,fn.11, found that
27   the Board's regulation provide that even if the crime is "exceptionally
   callous" an inmate may be found suitable for parole. The court declared that
28   "under the Board regulations, base terms for life prisoner's are not
   calculated until after an inmate is deemed suitable for release.(§ 2282,subd.

1    process violation."Biggs,supra,334 F.3d at 917.).

2    In Biggs, supra, the appeal was pursuant to his initial
3    suitability hearing. The petitioner has now had his 3rd Board
4    Hearings and submits his most recent denial which rests mostly
5    on the commitment offense, and therefore violates both State
6    and Federal due process. Most importantly, there is no evidence
7    that the public requires a lengthier period of incarceration
8    (please refer to Penal Code § 3041(b)), in relation to other
9    instances of the same crime (please refer to 3041.5).

10   Petitioner submits understanding and perspective of the
11   **crime is compelled by the Board's own proprotionately matrix**
12   **(please refer to CCR Division 2,§ 2403(c).** The matrix scale
13   and rating of the more common and routine variations of murder
14   apear to be codification of when a crime of this nature can
15   be more egregious than average. Petitioner submits that his
16   crime falls squarely in the matrix [category indicated for
17   petitioner's offense. With post-conviction credits, Petitioner
18   has exceeded his matrix by more than 4 years,1 month and 5
19   days- and without post-conviction credit application petitioner
20   has served his matrix. The Board fails in any attempt to
21   substantiate why petitioner's crime is so heinous as to require
22   that petitioner be expected time and time again from the
23   general rule that a parole date shall normally be set;please
24   see In re Ramirez, supra, wherein the court:

25   "The Board must weigh the inmate's criminal conduct
26   (4) Continued- (a).) The regulations therefore comtemplate that an inmate may
     be deemed suitable for release even though his offense demonstrated callous
27   disregerd for human suffering.(§ 2402,subd (c)(1)(D).)"

28

7-A-14

1       not against ordinary social norms, but against

2       other instances of the same crime of crimes.

3       (Ramirez,supra,94 Cal.App.4th at p.570).

4 Petitioner submits that the record is devoid of the Board

5 making such a comparison. Similarly, Petitioner's Psychiatric

6 Report evidence. like Biggs, supra, is supportive of release;

7 contrary to the Board's erroneous and specious findings

8 (please see Exhibit # I.)

9 The Court in Biggs, addressed the Board's illegal usage

10 of needed therapy and other illegal reasons to justify a highly

11 illegal denial; the Court concluded:

12      "The record in this case and the transcript of

13      Bigg's hearing before the Board clearly show

14      that many of the conclusions and factors relied

15      on by the Board were devoid of evidentiary basis."

16      (Biggs,supra,334 F.3d at p.915.)

17 The Court in Biggs, supra, went on to warn the Board that

18 while there was some evidence to use the crime as a basis for

19 denial at his initial hearing, the board's continued use of

20 the crime as a continuous denials would be violative of Biggs,

21 Federal Due Process rights. Petitioner submits that the Board's

22 usage of the initial commitment offense and/ or prior social

23 history, as a continued basis to deny him a parole date, has

24 violated his 5th and 14th Amendment rights under the United

25 States Constitution to not be deprived of liberty. The Court

26 in Biggs, also held:

27      "[T]o ensure that a state created parole scheme

28      serves the public interest purposes of

1    rehabilitation and deterrence, the Parole Board

2    must be cognizant, not only of the factors

3    required by state statute to be considered, but

4    also the concepts embodied in the Constitution

5    requiring due process of law ..."[please see

6    e.g., in Greenholtz, 442 U.S.at 7-8]." Biggs,

7    supra, 334 F.3d at p.916)

8

9    "The Parole Board's sole supportable reliance

10   on the gravity of the offense and conduct prior

11   to imprisonment to justify denial of Parole can

12   be initially justified as fulfilling the

13   requirements set forth by state law. Over time

14   however, should Biggs continue to demonstrate

15   exemplary behavior and evidence of rehabilitation,

16   denying him a parole date simply because of the

17   nature of the offense and prior conduct would

18   raise serious questions involving his liberty

19   interest in parole...")id).

20        In this case, petitioner's own circumstance, the Board's

21   pronouncement of numerous and unlawful conclusions is not

22   supported by the evidence, and, said violates the process due

23   to petitioner under both the State and Federal Constitutions.

24        Based upon the herein demonstrated bias, the Board's

25   decision cannot be shielded by the "some evidence" standard.

26        The only approapriate standard is independent review.

27

28

**CONCLUSION**

The Board's decision was arbitrary and capricious. Petitioner did not receive a fair hearing nor will he ever. Petitioner submits and contends that the finding of unsuitability was arbitrary and capricious (due to the Board's carrying out it's function of adhereing to a no or anti-parole policy under the continued use of commitment offense), due to the Board's acting contrary to the intent and spirit of Penal Code § 3041(b), and, due to its refusal to adhere to aforementioned decisions and the controlling authorities.

The Petitioner prays this Court order him discharged and/or released, or at the very least, direct the Board issue a decision within ten (10)days granting parole, setting his term "uniformly" as mandated by the legislature.

Petitioner seeks relief under the within mentioned and argued terms as submitted.

PRAYER FOR RELIEF

1. Issue an Order To Show Cause on an expedited basis.

2. Appoint Counsel.

3. Conduct an Evidentiary Hearing.

4. Order Petitioner's appearance before the Court;

5. Order Petitioner taken back before the Board for finding
   of suitability within ten (10) days, or in the alternative,
   order Petitioner released forthwith; and,

6. Declaratory relief;

7. Any other relief this court deems fair, just and appropriate.

///

///

///

1         List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3    of these cases:  <u>Superintendent v. Hill</u>, (1985) 472 U.S. 445; <u>Greenholtz v.</u>

4    <u>Nebraska</u>, (1979) 442 U.S. 1; <u>Board of Pardons v. Allen</u>, 482 U.S. 369 (1987)
     McQuillion v. Duncan, (9th Cir. 2002) 306 F.3d 895; <u>Biggs v. Terhune</u>, (9th

5    Cir. 2003) 334 F.3d 910; <u>In re Rosenkrantz</u>, (2002) 29 Cal.4th 616, 621;
     In re Lawrence, 150 Cal.App.4th 1511 (rev granted Sept. 19, 2007, affirmed

6    by Ca. Supreme Court on or about August 2{, 2008).

7    Do you have an attorney for this petition?                    Yes_____    No_<u>x</u>__

8    If you do, give the name and address of your attorney:

9       **Cannot Afford Counsel**

10      WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11   this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12

13   Executed on x _8/26/08_                    x/s/ _Paul Calloway_

14              Date                              Signature of Petitioner

15

16

17

18

19

20   (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS            - 7 -

## PROOF OF SERVICE BY MAIL
### BY PERSON IN STATE CUSTODY
(C.C.P. §§ 1013(A), 2015.5)

I, _Paul Calloway_____, declare:

I am over 18 years of age and I am party to this action.  I am a

resident of CORRECTIONAL TRAINING FACILITY prison, in the County

of Monterrey, State of California.  My prison address is:

_Paul Calloway____, CDCR #: _H92309_
CORRECTIONAL TRAINING FACILITY
P.O. BOX 689, CELL #: _____
SOLEDAD, CA 93960-0689.

On X_____, I served the attached:

_Federal Petition For Writ of Habeas Corpus_

on the parties herein by placing true and correct copies

thereof, enclosed in a sealed envelope (verified by prison

staff), with postage thereon fully paid, in the United States

Mail in a deposit box so provided at the above-named institution

in which I am presently confined.  The envelope was addressed as

follows:

Office Of The Attorney General
455 Golden Gate Ave Ste. 11000
San Francisco, CA 94102 - 7004

I declare under penalty of perjury under the laws of the

State of California that the foregoing is true and correct.

Executed on X_8/26/08_____.

X_Paul Calloway_____
                    Declarant

Paul Calloway
#H-92309 / G-316
P.O. Box 689
— Soledad, CA 93960-0689

LEGAL
MAIL

RECEIVED

AUG 2 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Clerk, U.S. District Court
Northern District of California
450 Golden Gate Ave
San Francisco, CA  94102-3483

